**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:14-cv-02059-RM-NRN

BONBECK PARKER, LLC; and
BONBECK HL, LLC,

      Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY OF AMERICA,

      Defendant.

---

## ORDER

---

      This is a property insurance dispute arising from hail damage to Plaintiffs' three commercial buildings in Parker, Colorado. At issue now are the following motions: Plaintiffs Bonbeck Parker, LLC and Bonbeck HL, LLC's ("Plaintiffs" or "Bonbeck") Motion for Partial Summary Judgment (ECF No. 137) on their Count I for breach of contract; and Defendant The Travelers Indemnity Company of America's ("Defendant" or "Travelers") Motion for Summary Judgment (ECF No. 139) on Plaintiffs' remaining two Counts (collectively, "Motions"). The parties filed responses and replies. The Motions are ripe for resolution. Upon review of the Motions, relevant parts of the court record, and the applicable statutes and case law, and being otherwise fully advised, the Court finds and orders as follows.

## I.      BACKGROUND

      On or about June 6, 2012, Bonbeck's commercial property suffered damage due to a hail storm. At that time, Bonbeck was insured by Travelers under a commercial property insurance policy, Policy No. H680-569A020 (the "Policy"). Thereafter, on June 14, 2012, Bonbeck

notified Travelers of the loss to three commercial buildings[1] (collectively, "Property"). Travelers opened a claim and assigned an adjuster to investigate and adjust the claim. Travelers also retained a third-party consultant, Altitude Property Claims, LLC ("APC"), to assist with the inspection of the Property.

On June 25, 2012, Travelers' adjuster inspected the Property with a representative from APC. Bonbeck also had a representative present during the inspection; he advised Travelers and APC the roof to one of the buildings, 11000 S. Parker Road, did not need to be inspected because it had recently been replaced and Bonbeck was not having any problems with it. Thus, Travelers and APC did not inspect the roof of 11000 S. Parker Road.

On June 26, 2012, the day after its initial inspection, Travelers hired an independent third-party, PIE Consulting and Engineering, to determine the extent of hail damage to condenser fins on 32 individual rooftop HVAC units.

APC's report, dated June 28, 2012, addressed the two roofs which were inspected. (ECF No. 140-3, p. 1.) PIE's report, dated July 9, 2012, concluded there was minor hail damage to condenser fins on the HVAC units which could be repaired by combing (straightening). (ECF No. 140-4, p. 5.)

Thereafter, based on its investigations and the APC and PIE reports, Travelers prepared an estimate of damages dated July 11, 2012. Travelers' estimated replacement cost of covered damages were $3,153.15 and, accordingly, after accounting for Bonbeck's $1,000 deductible, issued Bonbeck a check for $2,153.15. (ECF Nos. 140-7, 140-8.)

---

[1] Those buildings are located at 10970, 10920, and 11000 S. Parker Road, Parker, Colorado. (ECF No. 172-1 at ¶ 4.)

Bonbeck remained silent for a year. Then, on July 11, 2013, Bonbeck disputed Travelers' estimate and submitted an estimate of $114,000 to repair/replace the HVAC units on the two roofs inspected. Other than the HVAC units, Bonbeck did not dispute Travelers' roof assessment. When Travelers contacted Bonbeck to discuss its HVAC estimate, Bonbeck advised it was hiring a public adjuster and would provide Travelers a letter of representation. It was not until December 23, 2013, however, that Travelers received a letter of representation from Bonbeck's public adjuster.

On January 9, 2014, Bonbeck's public adjuster provided Travelers a report alleging the Property's roofs required full removal and replacement. On January 16, 2014, Bonbeck's public adjuster provided Travelers a replacement cost estimate totaling $2,201,133.96. After receipt of the estimate, Travelers agreed to re-inspect the Property and hired Nelson Forensics ("Nelson") to assist.

Travelers inspected the Property with Nelson on February 17, 18, and 21, 2014 and March 3, 2014.[2] By report dated March 11, 2014, Nelson disagreed with Bonbeck's public adjuster as to what conditions or damages were hail related. Nelson recommended certain repairs to restore the Property. (ECF No. 140-12, pp. 51-53.)

By letter dated April 2, 2014, Travelers notified Bonbeck not all claimed damages were covered under the Policy, citing to, for example, exclusions for wear and tear, deterioration, improper installation, and shrinkage. On April 15, 2014, Travelers issued a supplemental estimate adding sums for the straightening of the HVAC condenser coils and additional shake shingles. The revised estimate was for a replacement cost value ("RCV") of $50,386.27. Also

---

[2] The affidavit Travelers references does not show Travelers inspected the Property on February 17, 2014 but this fact was not disputed and does not materially affect the Court's findings and conclusions. As it is, essentially, stipulated to, the Court accepts this fact as true for purposes of the Motions.

on that date, Travelers issued a supplemental payment for $32,045.27, which represented the actual cash value ("ACV") of the damaged Property ($50,386.27 (RCV) - $17,341.00 (depreciation) - $1,000 (deductible)). Travelers withheld the depreciation amount until Bonbeck completed the repairs/replacements at issue.

On June 30, 2014, Bonbeck submitted a Proof of Loss claiming damages totaling $2,395,627.56 and demanded Travelers appraise the entire claimed loss under the Policy's appraisal provision (the "Appraisal Clause"). The Appraisal Clause provides:

**Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.    Pay its chosen appraiser; and
    b.    Bear the other expenses of the appraisal and
          umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(ECF No. 1 at ¶ 15; No. 14 at ¶ 15; No. 14-3, p. 1 (bold in original; Bates 00237).)

Bonbeck asserted appraisal was appropriate for "causation, scope and pricing" (ECF No. 172 at ¶ 26) and named its appraiser. In response to Bonbeck's appraisal demand, by letter dated July 2, 2014, Travelers disputed the term "amount of loss" used in the Policy's appraisal provision applied to issues of causation. In other words, Travelers disputed the scope of the appraisal proposed by Bonbeck. Thus, Travelers suggested a bifurcated appraisal where the appraisers would determine the value of the undisputed hail damage and the value of items

4

damaged by disputed causes; and coverage defenses would be reserved for future resolution. Bonbeck disputed this approach; it would not agree to a bifurcated appraisal. This action followed.

On July 24, 2014, Travelers filed this declaratory judgment action raising two claims.[3] First, Count I to determine coverage issues. And, second, Count II to stay appraisal until coverage is determined under the first claim or, alternatively, the Court issues an order concerning the scope of the appraisal and the authority of the appraisal panel. Bonbeck answered and filed four counterclaims. Thereafter, the parties filed cross motions for summary judgment as to the claims concerning the scope of the appraisal, Travelers' Count II and Bonbeck's Count IV. By Order dated October 24, 2016, the Court found in favor of Bonbeck, holding appraisers may determine the issue of causation and ordered the parties to proceed with an appraisal. This case was then stayed pending completion of the appraisal process.

Traveler's appraiser agreed $50,386.27[4] was the replacement cost value for the damages to the Property. Bonbeck's appraiser submitted an estimated replacement cost value of $1,512,545.77. Ultimately, on or about July 19, 2017, the appraisal panel entered an award in the amount of $305,248.76 (RCV) / $215,724.65 (ACV).[5] As relevant here, Travelers' Policy provides:

> **Loss Payment – Building and Personal Property**
> * * *
> h.   We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss provided that you have complied with all the terms of the policy; and

---

[3] This action was filed by Travelers as plaintiff and Bonbeck as defendant. By Minute Order dated September 11, 2018, upon motion filed by Travelers, the parties were re-designated as set forth above. (ECF No. 119.) Accordingly, in this Order, the Court refers to the claims and counterclaims at issue here not as they were originally denominated when filed but as "Counts."

[4] Travelers' revised estimate upon reinspection and after the Nelson report.

[5] The difference is the amount attributable to depreciation – $89,524.11.

(1) We have reached an agreement with you on the amount of loss; or
(2) An appraisal award has been made.

(ECF No. 14-3, p. 5 (bold in original; Bates 00241); ECF No. 171 at ¶ 33.)[6]

On September 21, 2017, Travelers paid the actual cost value amount awarded; Travelers'

total supplemental payment was $184,832.53, with a depreciation holdback amount of

$89,524.11. As to the recovery of depreciation holdback, the Policy provides:

**Loss Payment – Building and Personal Property**
* * *
e.  We will determine the value of Covered Property in the event of covered loss
    or damage as follows:

(1) At replacement cost (without deduction for depreciation), except as
    provided in Paragraphs (2) through (18) below.
    (a) You may make a claim for loss or damage covered by this insurance
        on an actual cash value basis instead of on a replacement cost basis. In
        the event you elect to have loss or damage settled on an actual cash
        value basis, you may still make a claim on a replacement cost basis if
        you notify us of your intent to do so within 180 days after the loss or
        damage.
    (b) We will not pay on a replacement cost basis for any loss or damage:
        (i)  Until the lost or damaged property is actually repaired or replaced;
             and
        (ii) Unless the repairs or replacement are made as soon as reasonably
             possible after the loss or damage.

(ECF No. 140-26, p. 2 (emphasis in original); No. 171 at ¶ 36.)

On September 27, 2017, Bonbeck notified the Court the appraisal process had been

concluded and that Travelers had paid the actual cash value of the appraisal award. The stay was

lifted and Bonbeck subsequently voluntarily dismissed its Count IV for common law bad faith

breach of contract. The parties' Motions followed. Bonbeck moves for summary judgment as

to liability on its Count I for breach of contract and as to alleged entitlement to certain payments.

---

[6] Hereafter, the "Loss Payment Provision."

Travelers moves for summary judgment on Bonbeck's Counts I (breach of contract) and II (unreasonable delay or denial of payment of covered benefits).

Meanwhile, although Bonbeck has received the ACV, it has only replaced "some" of the HVAC units at issue. Bonbeck, however, intends to replace other units and do other work on the Property.

## II.     LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

When the court is presented with cross motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations and quotations marks omitted). "'Cross motions for

summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## III. ANALYSIS

### A. Bonbeck's Count I for Breach of Contract

Bonbeck's Count I for breach of contract requires it to prove: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).[7] The Motions argue over the third and fourth factors. The Court addresses them in turn.

#### 1. Non-performance by Travelers

Bonbeck argues Travelers breached the Policy by (1) failing to pay the full amount owed, i.e., the amount determined through appraisal,[8] first in July 11, 2012 when Travelers paid only $2,153.15 and then in April 15, 2014 when Travelers paid only $32,045.27; and (2) refusing to participate in an appraisal until the Court ordered Travelers to do so. Travelers asserts that because Bonbeck elected to have an appraisal panel set the amount of loss and Travelers thereafter paid this amount in accordance with the Policy's terms, Bonbeck's argument that the earlier payments in amounts less than the appraisal award amounts to a breach of contract must fail. In other words, Travelers paid all amounts owed under the Policy and its failure to pay the award sooner was not a breach of contract.

---

[7] The Court has previously determined that Colorado law applies, which no party disputes. (ECF No. 83, p. 3.)
[8] Bonbeck did not specifically state whether this was the ACV or RCV but, based on Bonbeck's interest calculations, the Court assumes it was the ACV. Regardless, the Court finds it matters not for the purposes of the analysis of whether there was any breach as Bonbeck claims.

The Court starts with the second alleged nonperformance because it impacts the first.

### a) *Refusal to Comply with Policy's Appraisal Provision*

Travelers contends it did not refuse to engage in the appraisal process and seeking the Court's involvement in determining the scope of the appraisal process is insufficient to establish a breach of contract as whether appraisers could determine causation was fairly debatable. Bonbeck responds the breach at issue is not Travelers' filing of this lawsuit but, rather, its refusal to comply with the appraisal provision upon Bonbeck's demand. The issue, Bonbeck contends, is whether performance occurred as required – not whether Travelers' position was reasonable. The Court agrees.

The material facts here are undisputed. The Policy required an appraisal when demanded by either party. Here, Bonbeck made such a demand. Travelers, however, would not agree to Bonbeck's demand because its position was that the appraisal could not include causation. In order words, the parties disputed what the term "amount of loss" in the Policy encompassed. The Court determined Bonbeck was correct – the appraisers may determine the issue of causation – and ordered the parties to proceed with an appraisal. Thus, in refusing to engage in the appraisal requested by Bonbeck in June 2014, Travelers failed to perform in accordance with the Appraisal Clause by its letter dated July 2, 2014. But, this still leaves the issue of damages, without which a breach of contract claim cannot be sustained, which the Court addresses below.

### b) *Failure to pay full amount owed*

Travelers asserts that, under the Loss Payment Provision, its duty to pay arose after the appraisal was completed. Thus, its initial payments did not breach the Policy as the loss was not yet quantified. Bonbeck responds the Loss Payment Provision is irrelevant, relying on *Bowen v.*

*Farmers Ins. Exchange*, 929 P.2d 14 (Colo. App. 1996). The Court agrees with Travelers, mainly.

Under the Loss Payment Provision of the Policy, as relevant here, payment was due after the appraisal was completed. The proper inquiry here is, had Travelers made the correct decision to engage in the appraisal process in July 2014, when would the appraisal award been made? *See Home Loan Invest. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1324 (D. Colo. 2014) (posing similar inquiry on issue of when pre-judgment interest should begin to run). In this case, the undisputed evidence shows Bonbeck did not demand appraisal until June 2014. Thus, if Travelers had performed in accordance with the Appraisal Clause, appraisal would have been completed sometime after June 2014. It should go without saying that any payment would have been made *after* June 2014. Travelers would not have been required to perform – pay – prior to July 2014. As such, Travelers' payments of less than the full award in July 2012 and April 2014 did not breach the Policy.

Of course, Bonbeck could have demanded appraisal sooner but did not. Indeed, the parties speak of "delays." While it is certainly true the delay in payment after June 2014 was caused by Travelers' breach of the Appraisal Clause that could hardly be said of any delay prior to that time. For example, Travelers' initial payment was made in July 2012 but Bonbeck remained silent for a year. Then, Bonbeck advised its public adjuster would be contacting Travelers – but such contact did not occur until more than five months later. Regardless, at issue is had Travelers performed in accordance with the Appraisal Clause, when should Bonbeck have been paid. And, clearly, it would have been after June 2014.

Bonbeck's reliance on *Bowen* is unavailing. There, at issue was a liability policy with a different policy provision which the *Bowen* Court found was ambiguous. The *Bowen* Court

found the uninsured motorist provision "merely prescribe[d] *how* the insurer's obligation was to be determined and [did] not establish *when* the obligation" arose. *Bowen*, 929 P.2d at 16 (emphasis in original). The parties do not argue the Loss Payment Provision is ambiguous and, moreover, this provision specifically states *when* payment is due.[9] Thus, Bonbeck's motion for partial summary judgment in its favor on its claim for breach of contract based on Travelers' failure to pay the amount of the appraisal award in July 2012 or April 2014 is denied. Correspondingly, Travelers' motion on the same basis is granted.[10]

### 2. Damages

The parties argue over whether Bonbeck has shown it suffered damages as a result of Travelers' nonperformance. Because the Court finds only nonperformance of the Appraisal Clause, it will consider only such damages as may relate to such nonperformance.

#### a) *Nominal Damages*[11]

Bonbeck contends that under contract law, at a minimum, if it prevails, it is entitled to recover nominal damages of $1.00. Travelers returns such damages were never disclosed. The Court finds otherwise.

Bonbeck's claim for breach of contract specifically requests for an "award all damages including, but not limited to, actual damages, consequential damages, interest, attorney fees and costs, and any other such relief as this Court deems just and appropriate." (ECF No. 14, p. 11.) That nominal damages were not specifically identified in the pleading or in any disclosure does not require a contrary finding. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information

---

[9] Bonbeck does not contend that any payment of the appraisal award was untimely.
[10] Travelers' motion was broader arguing that it timely paid all amounts due in reliance on its payment in 2017. Bonbeck's response raises only the same two breaches alleged in its Motion. Accordingly, Travelers is entitled to summary judgment on such nonperformance as alleged in support of Bonbeck's breach of contract claim.
[11] Bonbeck asserts there are other damages which it is seeking but that it is not moving for summary judgment because they are factual issues for a jury.

… as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")  Accordingly, the Court finds in favor of Bonbeck on this issue.  *See* Colo. Jury Instr., Civil 30:41 (June 2019) ("If you find in favor of the plaintiff, but do not award any general, special, or liquidated damages, you shall award the plaintiff nominal damages in the sum of one dollar.").

### b) *Consequential Damages*

Bonbeck asserts it is entitled to recover, as damages, the costs of *this* litigation pending before the Court, as well as the cost of its public adjuster.  Bonbeck essentially concedes the American Rule precludes an award of fees but argues it does not preclude an award of costs. Travelers argues[12] that under the American Rule, attorney's fees and costs are generally not recoverable as damages absent a contractual or statutory basis, and Bonbeck hired its public adjuster before the alleged breaches ever occurred.  The Court agrees with Travelers.

First, no showing has been made that attorney's fees are recoverable as damages on this claim.  *See Public Serv. Co. of Colo. v. Continental Cas. Co.*, 26 F.3d 1508, 1521-23 (10th Cir. 1994).  Accordingly, the Court finds attorney's fees cannot be recovered as damages on this Count.

Next, notwithstanding acknowledging the applicability of *Continental*, Bonbeck cites to *First Citizens Bank & Trust Co. v. Stewart Title Guaranty Co.*, 320 P.3d 406 (Colo. App. 2014) as support for its argument that costs are nonetheless recoverable as damages.  Bonbeck's argument misses the mark because it fails to distinguish between costs recoverable as damages

---

[12] Travelers also contends that because there was no breach, there can be no consequential damages.  But, the Court has found there was a failure to perform in accordance with the Appraisal Clause in July 2014.

and costs recoverable as a prevailing party. As the *Continental* Court found, neither attorneys' fees nor litigation expenses are generally recoverable as an item of damages in a contract action. *Continental*, 26 F.3d at 1522-23. *First Citizens* did not hold otherwise. There, costs were recovered by the prevailing party under C.R.C.P. 54. *First Citizens*, 320 P.3d at 415.

Finally, Bonbeck's argument concerning the costs of its public adjuster is also unavailing. Here, even assuming such costs are otherwise recoverable as damages, this cost was incurred no later than January 2014, when the public adjuster provided its $2.2 Million estimate to Travelers. Travelers' nonperformance of the Appraisal Clause, however, did not occur until after June 2014. Thus, the costs of a public adjuster could not be a *consequence* of Travelers' breach. *SOLDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 838-39 (10th Cir. 2016) (consequential damages compensate for loss resulting from breach) (applying Colorado law); *Kingshill Hospitality, Inc. v. American Economy Ins. Co.*, No. 5:18-cv-520-OC-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018) (striking claim for public adjuster expenses as those costs were incurred before the alleged breach occurred). Accordingly, Bonbeck fails to show the costs claimed constitute consequential damages; therefore, they cannot serve to support its breach of contract claim.

### c) *ACV as Damages*

Bonbeck contends its damages also include the additional $184,832.53 which was awarded by the appraisal panel. Bonbeck argues because this amount was due in July 2012 and April 2014, Travelers' subsequent payment of this amount does not preclude a finding of breach of contract. Travelers argues its payment obligation did not arise until after the award was entered and it paid accordingly. Further, Travelers asserts the appraisal award does not establish it breached the contract.

The Court agrees the appraisal award does not establish Travelers failed to perform under the Appraisal Clause and does not preclude a claim for breach of contract. But, that is not the issue – the issue is whether this award can serve to support Bonbeck's contention that it has damages. Bonbeck relies on *Andes Trucking Co. v. United Fire & Cas. Co.*, No. 17CA1672, 2018 WL 4496407 (Colo. App. Sept. 20, 2018), but such reliance is misplaced. In *Andes Trucking*, after completion of the appraisal process, the trial court dismissed the insured's complaint under C.R.C.P. 12(b)(5) (failure to state a claim) finding the completion of the process precluded Andes Trucking's claims. In reversing the trial court, the Colorado Court of Appeals stated that "an appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor on the insured's claims of breach of contract or statutory bad faith." 2018 WL 4496407, at *3. This was so, the *Andes Trucking* Court found, because an appraisal award determined the amount of loss but not the merits of any claim. Nowhere in *Andes Trucking* does that opinion address much less support Bonbeck's proposition that the paid appraisal award constitutes damages sufficient to support its breach of contract claim. Thus, the Court finds Bonbeck fails to show such damages are recoverable.

### d) Withheld appreciation

As its final argument on damages, Bonbeck relies on the remaining depreciation which was withheld from the appraisal award. Bonbeck recognizes that normally withheld depreciation is owed under an insurance policy when the work is performed and the amounts are incurred by the insured but argues this rule does not apply here. Bonbeck's argument is two-fold. First, on the position that when one party (Travelers) breaches a contact, the other party (Bonbeck) is relieved of its duty to continue performance. And, second, that when on party (Travelers) prevents or hinders the other party's (Bonbeck's) ability to perform, the other party's (Bonbeck)

14

failure to perform is excused. Travelers, on the other hand, as relevant here, asserts that even if it did breach, any prevention of performance was temporary. Travelers argues it has fulfilled its contractual obligation of paying the amount of loss set by the appraisal but Bonbeck still has not completed the repairs – more than two years after it was paid. The Court agrees.[13]

To start, Bonbeck's first argument is so cursory as to be waived; it consists of one sentence, a citation to a single case, and no analysis. *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013) (arguments presented in a perfunctory and conclusory fashion are waived). Bonbeck's second argument is also unavailing, albeit for a different reason.

Bonbeck's "prevention of performance" argument relies on Traveler's *initial* payments of less than the appraisal award and *initial* refusal to go forward with an appraisal which allowed appraisers to determine causation. Bonbeck asserts this left it in a no-win situation as it did not have the necessary funds and it could not have repaired prior to the appraisal panel's inspection of the Property and issuance of a decision. Thus, Bonbeck contends, it should be awarded the depreciation withheld regardless of whether it performed the repairs. But, as Travelers argue, Bonbeck has been paid but nonetheless fails to complete such repairs. It is Bonbeck's failure to repair or replace *after* it was paid the appraisal award which precludes the recovery of the withheld depreciation. It is undisputed Bonbeck can repair/replace and indeed plans to repair or replace but has not done so.

Bonbeck cites to several decisions from other states but none are controlling and are distinguishable. For example, in *D & S Realty, Inc. v. Markle Ins. Co.*, 816 N.W.2d 1, 5-6 (Neb. 2012), the insurer denied coverage entirely for the loss and made no payment. Similarly, in

---

[13] The Court's finding is based on its understanding that Travelers raises only one condition to its payment of the withheld depreciation  - the repair of the Property *after* Bonbeck received the actual cash value payment.

*Conrad Bros. v. John Deere Ins. Co.,* 640 N.W.2d 231, 242 (Iowa 2001), the court found the insurer had denied any coverage on the claim by the insured, thereby repudiating the contract which contributed materially to the insured's failure to repair. Such facts and circumstances are not present here. Accordingly, based on the undisputed material facts, Bonbeck may not recover the withheld depreciation as damages.

### 3. Statutory Interest

The Motions seek summary judgment on the issue of statutory interest. Under Colo. Rev. Stat. § 5-12-102(1)(b) interest at the rate of eight percent per annum compounded annually is recoverable "for all moneys … after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." Bonbeck contends it is entitled to statutory interest on the ACV and the withheld depreciation, both to run from July 11, 2012, the date Travelers made its first payment. Travelers essentially argues because it did not breach the Policy (i.e., there can be no compensatory award), there was no wrongful withholding of monies. And, further, Travelers contends, monies would not have been wrongfully withheld until the amount owed was quantified through the appraisal process. The Court starts with the withheld deprecation.

As stated above, the Court finds no damages in the form of withheld depreciation has been shown. It follows such amount was not wrongfully withheld; therefore, statutory interest is also not recoverable on the withheld depreciation.

Statutory interest on the ACV, however, is another issue. In examining this issue, the Court focuses on the claim for breach of contract based only on Travelers' failure to perform under the Appraisal Clause. Which brings the Court back to this inquiry: had Travelers performed when would the appraisal award have been paid? There are, however, insufficient

undisputed material facts – and analysis by the parties – on this record to grant summary judgment to Bonbeck on this issue. Bonbeck's contention that interest should run from July 11, 2012 presumes the appraisal award was due on "demand" for payment on its claim. But, that is not so as the parties were required to engaged in the appraisal process.

In conclusion, summary judgment is granted to Travelers on the issue of statutory interest on the withheld depreciation; no interest is due. Summary judgment is granted in part and denied in part on the issue of statutory interest as to the ACV. It is granted to Bonbeck in that statutory interest may be awarded but denied as to when it accrues and how to calculate the same. It is denied as to Travelers on the basis that statutory interest may be awarded based on the ACV.[14]

### B. Bonbeck's Claim for Statutory Bad Faith

In order to establish its claim for statutory bad faith breach of contract, Bonbeck must establish that (1) benefits were owed; and (2) Travelers "unreasonably" delayed or denied payment of a claim for benefits owed. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2081); *see* Colo. Rev. Stat. § 10-3-1115(1)(a). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact,

---

[14] At this time, the Court makes no findings or order on the calculation of statutory interest, e.g., how to account for Travelers' earlier payments.

reasonableness may be decided as a matter of law." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 992 (Colo. App. 2015) (internal quotation marks and citation omitted).[15]

Travelers argues the undisputed material facts show it reasonably investigated and evaluated Bonbeck's claim; it reasonably filed this declaratory judgment action as the interpretation of the Appraisal Clause was "fairly debatable"; and Bonbeck has no evidence that Travelers acted unreasonably, e.g., no expert opinion. Bonbeck responds that Travelers had a duty to investigate, evaluate, and determine the amounts owed on the claim and to comply with the Colorado Unfair Claims Practices Act ("CUCPA"), which require no expert testimony to evaluate and of which there are genuine issues of material fact. The Court examines the alleged unreasonable conduct on which Bonbeck relies in turn.

### 1. Travelers' Initial Investigation in June 2012

Bonbeck asserts it notified Travelers that it had damage in each of the three buildings but Travelers initially only inspected two of the three buildings and its estimate of $3,153.15 was only for two buildings. Thus, this initial investigation violated the CUCPA and there was no reasonable basis to withhold payment for damages sustained in the third building. Travelers responds the undisputed material facts show that it did inspect the three buildings, it just did not inspect the roof of the third building initially. But, Travelers asserts, it did not do so because Bonbeck, through its representative, advised Travelers it did not need to do so.

Bonbeck apparently contends there is a material factual dispute which preclude summary judgment because Travelers' Rule 30(b)(6) representative testified as follows:

---

[15] Travelers assert Bonbeck's claim is for unreasonable delay, rather than denial, as Travelers admitted Bonbeck's loss was covered under the Policy but disagreed as to the amount of loss. Bonbeck responds there are genuine issues of material fact regarding its claim for unreasonable "delay/denial" but appears to argue delay. As Bonbeck relies on the same arguments and facts for delay/denied, the Court finds it needs to make no distinction in this instance.

> Q: Do you know why only two buildings were inspected by Mr. Potter and Mr. Blackburn during their initial inspection?
> A: I - - I don't.
> Q: Do you have any - - do you dispute that only two of the three buildings were actually inspected during the initial inspection?
>
>              \* \* \*
>
> A: I - - as I sit here, I don't think - - I don't know if I dispute it or not. I don't recall that I've even looked at that.

(ECF No. 157-6, 65:4-10 (objection omitted).) Mr. Blackburn, of APC, who did the inspection, however, confirmed that he was hired to assist with the inspection of three buildings. He also confirmed that because Bonbeck's representative advised the *roof* of the third building (11000 S. Parker Road) did not need to be inspected, the *roof* of that building was not inspected. Moreover, Travelers submitted photos showing the *building* was inspected and it found no damage. (ECF No. 172-2.)[16] On this record, a reasonable juror could not find that Travelers' investigation of the third building – including its lack of inspection of that roof – was unreasonable. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 569 (Colo. App. 2015) (insurer entitled to judgment where insured failed to prove requisite elements of her claims for common law and statutory bad faith).

### 2. Travelers' "insufficient" payments

Bonbeck argues Travelers failed to pay the full amounts due under the Policy because its estimate and payment did not include amounts owed for permitting costs, which Bonbeck's public adjuster attempted to resolve. Travelers' Rule 30(b)(6) representative testified that permitting costs are typically paid on an as incurred basis – when the contractor pulls the permit and documents the expense. And, here, Bonbeck has not incurred such expenses. Moreover,

---

[16] Indeed, *Bonbeck's* initial estimates all relate to only the two buildings and their roofs. (ECF Nos. 140-9, Ex. G.) It was not until after Bonbeck hired its public adjuster that it raised an issue with the third building.

Travelers assert, in the absence of expert testimony, Bonbeck cannot establish Travelers' method of payment permitting fees violated industry standards.

As an initial matter, Bonbeck's argument regarding its public adjuster is unclear. To the extent Bonbeck relies on anything said or done by its public adjuster to show that permitting fees should be included in the estimate or payment, Bonbeck fails to show where this may be found and the Court will not search the record to locate it. Bonbeck's reliance also appears misplaced because it, through its public adjuster, disputed Travelers' estimates and this dispute was resolved through the appraisal process. Thus, Bonbeck's argument is unavailing.

Travelers' argument that Bonbeck fails to show its payment methodology violates industry standards, however, is not unavailing. At the beginning of its arguments on unreasonable delay/denial, Bonbeck contends that expert testimony is not required to establish industry standards. Instead, Bonbeck asserts, the applicable standards may be found in Colorado law, citing to Colo. Rev. Stat. § 10-3-1104(1)(h)(I), (II), (IV), (VII), (XIV) and general case law, as well as the common-sense standards of ordinary people. Bonbeck presumably contends this argument applies to all of the conduct at issue.

The Court agrees that expert testimony is not always required to establish industry standards. *Fisher v. State Farm Mut. Ins. Co.*, 419 P.3d 985, 994 (Colo. App. 2015) (citing *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004)). And, as Travelers concedes, the CUCPA may be evidence of insurance standards the noncompliance of which may be evidence of unreasonableness. *Allen*, 102 P.3d at 343-44.[17] Further, expert testimony is also not required

---

[17] It should be noted that if the standard relied on is not within the common knowledge and experience of ordinary persons, expert testimony is required. *Allen*, 102 P.3d at 343-344.

where the standard of care is within the common knowledge and experience of the average person. *Id.* at 366, 343-44.

Here, Bonbeck fails to tie any of the Colorado standards to the conduct complained of (the payment methodology) and how or why it applies in this instance. The Court declines to construct any argument on its behalf. *Shero v. City of Grove, Okla.,* 510 F.3d 1196, 1207 (10th Cir. 2007). Further, the Court cannot say Travelers' payment methodology is within the common knowledge of ordinary people. Therefore, Bonbeck fails to meet its burden here.

### 3. Travelers' Refusal to Comply with Bonbeck's Appraisal Request

Bonbeck argues that while no Colorado appellate court had specifically addressed the issue of causation in appraisal, Travelers had no reasonable basis to demand a bifurcation of the appraisal process before it would agree to an appraisal. Bonbeck argues Travelers' refusal was unreasonable because its conduct was a breach of contract, violated § 10-3-1104(1)(h)(I) and (VII) of the CUCPA, and was contrary to the majority of other insurance carriers in Colorado. Bonbeck also asserts, albeit in a footnote, that it disagrees the scope of an appraisal was fairly debatable and, further, whether this was fairly debatable is not relevant to a statutory delay (as opposed to a common law bad faith) claim. Travelers, on the other hand, argues its challenge before this Court was not without a reasonable basis; the case law refutes the public adjuster's testimony that it was rare for the scope of appraisal to be disputed; and whether a matter is "fairly debatable" is relevant to a statutory bad faith claim.

***Breach of contract.*** First, to the extent Bonbeck so argues, the Court declines to find that an insurer's breach of contract, standing alone, is tantamount to unreasonable conduct. If that were the case, then every breach of contract would also be an unreasonable delay or denial. But, of course, that is not so. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185-86 (Colo.

2018) (explaining difference between claim for breach of contract and claim for unreasonable delay or denial of insurance benefits).

***"Rarity" of Travelers' Dispute***.  While Bonbeck's public adjuster did testify that it was "pretty rare" for an insurance company to dispute whether causation could be appraised, Travelers has shown to the contrary.  Indeed, the Court's Order on the issue cited to a number of decisions involving various insurance companies.  (*See* ECF No. 83.)  Thus, such conclusory testimony fails to create a triable issue of fact on the question of unreasonableness.  *See High Desert Relief, Inc. v. United States,* 917 F.3d 1170, 1181 (10th Cir. 2019).

***"Fairly Debatable."***  As for the "fairly debatable" issue, while the Colorado Court of Appeals suggested in *Nibert v. Geico Cas. Co.,* No. 16CA0322, 2017 WL 710504, at *3 (Colo. App. 2017), that the "fairly debatable" inquiry is irrelevant to a statutory delay claim, this isolated suggestion appears to be a misstatement of Colorado law.  *See O'Sullivan v. Geico Cas. Co.*, No. 15-cv-1838-WJM-MJW, 2017 WL 1243017, at *1-2 (D. Colo. Mar. 24, 2017).  Instead, as evidenced by the *Nibert* Court's citations and other discussion, "under Colorado law, fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226-27 (10th Cir. 2016) (cited by *Nibert*).  And, based on the undisputed material facts, a reasonable factfinder could not have gone either way on the issue.  Instead, a reasonable person would find Travelers' justification for requesting a bifurcated approach and filing a declaratory judgment on the scope of the appraisal to be "fairly debatable."  While this is not outcome determinative, it nonetheless weighs against finding Travelers' acted unreasonable.

***Violation of CUCPA.***  Bonbeck also argues Travelers' conduct violated § 10-3-1104(1)(h)(I) ("Misrepresenting pertinent facts or insurance policy provisions relating to

coverages at issue.") and (h)(VII) ("Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.") of the CUCPA. Bonbeck's argument relies on Travelers' July 2014 decision not to proceed with Bonbeck's appraisal demand. But Bonbeck fails to explain or discuss how Travelers' conduct violated the CUCPA.

First, Bonbeck summarily asserts Travelers misrepresented the applicable insurance policy "provisions" which the Court presumes is the Appraisal Clause. But, what was the misrepresentation? If Bonbeck is contending that Travelers misrepresented the scope of the Appraisal Clause, such contention is rejected because the undisputed material facts show there was a disagreement as to the scope of this provision. The parties' disagreement over the interpretation of a policy provision, without more, does not support a finding of a violation of the CUCPA.

Bonbeck's other argument – equally conclusory – fairs no better. Bonbeck contends Travelers compelled Bonbeck to participate in litigation to compel appraisal in order to recover the amounts ultimately owed. But, that is incorrect. Travelers did not contend the parties' dispute was not subject to appraisal; it disputed the scope of the appraisal to be had. An issue that had not been decided by a Colorado appellate court and which was fairly debatable. Travelers' declaratory judgment claim asked the Court to resolve that dispute so the parties could then go forward with the appraisal. Based on these disputed material facts, Travelers' conduct does not fall within § 10-3-11104(1)(h)(VII) and was not unreasonable – even if it resulted in "delaying" the appraisal until the Court resolve the issue. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) ("It is reasonable for an insurer to challenge claims that are fairly debatable." (deciding common law bad faith claim)); *State Farm Mut. Auto. Ins.*

*Co. v. Fisher*, 618 F.3d 1103, 1109 (10th Cir. 2010) (insurer's decision to file declaratory judgment action on an issue that was fairly debatable was not unreasonable under § 10-3-1116(1)).

*Other Unreasonable Acts.* As a final position, Travelers claims Bonbeck cannot produce evidence Travelers acted unreasonably. In its argument, Travelers focuses on three allegations: (1) Travelers' investigation was outcome oriented and unreasonable; (2) Travelers' refusal to comply with Bonbeck's appraisal demand was without a reasonable basis and delayed/denied Bonbeck's ability to resolve this matter; and (3) Travelers failed to meet industry standards in its investigation or its coverage interpretation of the Appraisal Clause. For this final position, Travelers relies on Bonbeck's objections and failure to respond to contention interrogatories as to (1) and (2) above, and Bonbeck's lack of expert testimony to identify and explain industry standards and how Travelers acted in violation of such standards as to (3).

Bonbeck's response essentially argues Travelers' contention interrogatories were improper but, regardless, the evidence to support these positions may be found in the admissions of Travelers and its corporate representative. Then, in a footnote,[18] Bonbeck refers the Court generally to Exhibits 1 and AA, arguing there the Court would find the deficiencies in Travelers' handling of the claim. Not surprisingly, at bottom, Travelers responds Bonbeck fails to provide sufficient evidence to support its statutory bad faith claim. The Court agrees.

It its discussion above the Court has addressed the specific conduct which Bonbeck raises in its response to Travelers' Motion for Summary Judgment. Travelers' contention in this last argument is that Bonbeck has no other evidence of unreasonable conduct to support its statutory bad faith claim. Thus, regardless of whether Bonbeck was or was not required to respond to the

---

[18] ECF No. 155, p. 18 n.3.

contention interrogatories, it was incumbent upon Bonbeck to produce *sufficient evidence here* of any other unreasonable conduct.  Thus, for example, if Bonbeck claims Travelers' investigation was outcome oriented and unreasonable, Bonbeck was required to provide evidence to support this allegation.  Bonbeck's reference to Exhibits 1 and AA is insufficient for at least two reasons.

First, a cursory statement in a footnote pointing the Court generally to documents is insufficient to meet Bonbeck's burden of producing evidence.  *See In re C.W. Min. Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived." (internal quotation marks, brackets, and citation omitted)).  Regardless, next, the Court's review of the documents fail to show how or why they support unreasonable conduct.  Exhibit 1 is simply Travelers' April 15, 2104 supplemental estimate.  Exhibit AA contains excerpts from Bonbeck's public adjuster deposition with his "rarity" testimony (which the Court has already addressed) and with his confirmation that, to his understanding, the Appraisal Clause was "open for interpretation."  (ECF No. 157-1, 84:10-25, 85:1-25, 86:1-13.)  Such evidence is insufficient to create a jury issue on Bonbeck's statutory bad faith claim.

In summary, where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it can meet its initial burden by pointing out the lack of evidence on an essential element of the nonmoving party's claim.  *Adams v. Am Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  At that point, the burden shifts to the nonmoving party to identify sufficient evidence that is pertinent to the material issue by reference to an affidavit, deposition transcript, or specific exhibit.  *Id.*  This Bonbeck fails to do.

### C.  Bonbeck's Voluntary Dismissal of Count III

As stated, Bonbeck filed a voluntary dismissal of its Count III for common law bad faith under Fed. R. Civ. P. 41(a)(1)(A(i).[19]  (ECF No. 31.)  The Court of Appeals for the Tenth Circuit, however, has found "[t]hat rule speaks to dismissal of an action, not just a claim within an action."  *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996).  Thus, the Tenth Circuit found the contention "that Rule 41(a) applies to dismissal of less than all claims in an action" to be unsupported.  Although Bonbeck's voluntary dismissal was ineffective under Rule 41(a), on this record, it is undisputed there was no objection to the dismissal of this claim and the parties have treated this Count as dismissed.  Accordingly, the Court construes the voluntary dismissal as Bonbeck's unopposed request for dismissal and grants such request *nunc pro tunc* to March 13, 2019.

### IV.    CONCLUSION

Based on the foregoing, it appears the only issues which remain are: (1) Travelers' Count I regarding coverage and (2) damages on Bonbeck's Count I for breach of contract based on Travelers' breach of the Appraisal Clause.  However, it also appears, based on the Court's prior Order regarding the scope of appraisal, the briefing here, and this Order, that Travelers' Count I is now moot.  Thus, the parties are ordered to confer prior to the upcoming Trial Preparation Conference and be prepared to discuss what remains to be tried to a jury.

Accordingly, it is **ORDERED**

(1) That Travelers' Motion for Summary Judgment is GRANTED IN PART and

DENIED IN PART as follows:

---

[19] Pursuant to Fed. R. Civ. P. 41(a)(1)(B), with an exception inapplicable here, "[u]nless the notice or stipulation states otherwise, the dismissal is without prejudice."

(a) Summary judgment is granted in favor of Travelers and against Bonbeck on its Count II for unreasonably delay or denial of benefits and Count II is DISMISSED WITH PREJUDICE;

(b) Summary judgment is granted in favor of Travelers and against Bonbeck on its Count I for breach of contract based on Travelers' alleged failure to pay the appraisal award in July 2012 or April 2014;

(c) Summary judgment is denied on Bonbeck's Count I for breach of contract as to liability based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014;

(d) Summary judgment is granted in favor of Travelers and against Bonbeck on Bonbeck's Count I for breach of contract based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014 as to the following damages:

  (i)   Attorney's fees and costs of this litigation, including public adjuster fees, are not recoverable;

  (ii)  Withheld appreciation is not recoverable;

  (iii) The ACV paid does not constitute damages;

(e) Summary judgment is denied as to Travelers on Bonbeck's Count I for breach of contract based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014 as to the following damages: nominal damages;

(f) Summary judgment is granted in part and denied in part on the issue of statutory damages as to Bonbeck's Count I for breach of contract based on Travelers'

27

failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014 as follows:

    (i)      Bonbeck may recover statutory interest based on the ACV; and

    (ii)     Bonbeck may not recover statutory interest on the withheld depreciation;

(2) That Bonbeck's Motion for Partial is GRANTED IN PART and DENIED IN PART as follows:

    (a) That summary judgment is granted in favor of Bonbeck and against Travelers on Bonbeck's Count I for breach of contract as to liability based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014;

    (b) That summary judgment is granted in favor of Bonbeck and against Travelers on Bonbeck's Count I for breach of contract as to damages based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014, as follows:

        (i)      Bonbeck may recover, at a minimum, nominal damages of $1 on its breach of contract claim based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014;

    (c) That summary judgment is denied as to Bonbeck's Count I for breach of contact as to damages based on Travelers' failure to engage in appraisal after Bonbeck demanded an appraisal on June 30, 2014, as follows:

        (i)      ACV as Damages;

        (ii)     Withheld depreciation;

        (iii)    Attorney's fees and costs of this litigation, including public adjuster fees;

(d) That summary judgment is granted in part and denied in part as to Bonbeck's claim for statutory interest in Count I for breach of contract based on Travelers' alleged failure to pay the appraisal award until September 2017 as follows:

    (i)    That statutory interest may be recovered on the ACV; and

    (ii)    That statutory interest may not be recovered on the withheld appreciation;

(e) That summary judgment is denied as to Bonbeck's Count I for breach of contract based on Travelers' alleged failure to pay the appraisal award earlier in July 2012 or April 2014;

(3) That Bonbeck's Count III for bad faith breach of contract is hereby DISMISSED WITHOUT PREJUDICE *nunc pro tunc* to the 13th day of March, 2019; and

(4) That the parties shall confer prior to the Trial Preparation Conference and be prepared to discuss what remains for trial at the conference.

DATED this 3rd day of February, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge